UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGELICA MEDINA, O/B/O          :
WILBERT CRUZ,                   :
        Plaintiff,             :
                                :
    v.                          :          CA 08-263 S
                                :
MICHAEL J. ASTRUE, COMMISSIONER, :
SOCIAL SECURITY ADMINISTRATION, :
        Defendant.             :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

        This matter is before the Court on the request of Plaintiff
Angelica Medina ("Plaintiff"), on behalf of her son, Wilbert Cruz
("Claimant" or "the child"), for judicial review of the decision
of the Commissioner of Social Security ("the Commissioner"),
denying Supplemental Security Income ("SSI") benefits, under §§
205(g) and 1631(c)(3) of the Social Security Act, as amended, 42
U.S.C. §§ 405(g), 1383(c)(3) ("the Act").  Plaintiff has filed a
motion to reverse the decision of the Commissioner.  <u>See</u>
Plaintiff's Motion to Reverse the Decision of the Commissioner
(Document ("Doc.") #10) ("Motion to Reverse").  Defendant Michael
J. Astrue ("Defendant") has filed a motion for an order affirming
the decision of the Commissioner.  <u>See</u> Defendant's Motion for
Order Affirming the Decision of the Commissioner (Doc. #12)
("Motion to Affirm").

        This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's determination that Claimant is not disabled is
supported by substantial evidence in the record and is legally
correct.  Accordingly, based on the following analysis, I
recommend that Plaintiff's Motion to Reverse be denied and that

Defendant's Motion to Affirm be granted.

## Procedural History

On September 25, 2006,[1] Plaintiff filed an application for SSI on behalf of Claimant, (Record ("R.") at 8, 102-108), alleging that he had been disabled since January 1, 2006, due to anxiety, hyperactivity, a learning disability, and speech problems, (R. at 102, 116, 120, 141, 166).  The claim was denied initially, (R. at 8, 52-54, 66-68), and on reconsideration by a Federal Reviewing Official ("FRO"), (R. at 8, 55-65), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 8, 86).  A hearing was held on October 25, 2007, at which Plaintiff and Claimant, represented by counsel, appeared and testified.  (R. at 8, 22-51)  On February 28, 2008, the ALJ issued his written Decision, finding that Claimant was not disabled and, therefore, not eligible to receive child SSI benefits.  (R. at 8-21)

The Decision Review Board selected Plaintiff's claim for review, (R. at 5), and on May 21, 2008, affirmed the ALJ's decision, (R. at 1-3, 4), thereby rendering his decision the final decision of the Commissioner, (R. at 1).  Thereafter, Plaintiff filed this action for judicial review.

## Issues

The issue for determination is whether the ALJ's decision that Claimant is not disabled is supported by substantial evidence in the record and is legally correct.

## Background

Claimant was born in 2000.  (R. at 11, 76, 102, 116, 141, 166)  He was seven years old at the time of the October 25, 2007,

---

[1] Although the Administrative Law Judge ("ALJ") stated in his decision that the application was filed on September 20, 2006, (Record ("R.") at 8), the date on the application is September 25, 2006, (R. at 102).

hearing.  (R. at 27, 34)  At the time of the hearing, he was
repeating the first grade.  (R. at 31, 42)

### Law Governing Childhood Disability Claims

Under the current standard for defining childhood
disabilities under the Act:

> An individual under the age of 18 shall be considered
> disabled ... if that individual has a medically
> determinable physical or mental impairment, which results
> in marked and severe functional limitations, and which
> can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not
> less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906 (2009).

> In evaluating a child's application for SSI benefits, an
> ALJ must engage in a three-part inquiry and determine
> whether: (1) the child is engaged in substantial gainful
> activity; (2) the child has an impairment or combination
> of impairments that is severe; and (3) the child's
> impairment meets or equals an impairment listed in
> Appendix 1, Subpart P of the regulations.  20 C.F.R. §§
> 416.924(b)-(d).  If, at the third step of the analysis,
> the ALJ determines that the child's impairment does not
> meet or equal a listed impairment, the ALJ must then
> consider whether the child's impairment is equivalent in
> severity to that of a listed impairment (i.e., whether it
> "results in limitations that functionally equal the
> listings").  20 C.F.R. § 416.926a(a).

Orben v. Barnhart, 208 F.Supp.2d 107, 109 (D.N.H. 2002).
"Functional equivalency means that the impairment is of 'listing-
level severity; i.e., it must result in "marked" limitations in
two domains of functioning or an "extreme" limitation in one
domain ....'"[2]  Encarnacion v. Barnhart, 331 F.3d 78, 84 (2nd

---

[2] Section 416.926a(e)(2) provides, in relevant part, that:

(i) We will find that you have a "marked" limitation in a
domain when your impairment(s) interferes seriously with your
ability to independently initiate, sustain, or complete
activities.  Your day-to-day functioning may be seriously

Cir. 2003)(quoting 20 C.F.R. § 416.926a(a))(alteration in
original).

> The ALJ considers how a child functions in his
> activities "in terms of six domains:" "(i) Acquiring and
> using information; (ii) Attending and completing tasks;
> (iii) Interacting and relating with others; (iv) Moving
> about and manipulating objects; (v) Caring for yourself;
> and[] (vi) Health and physical well-being." [20 C.F.R.]
> § 416.926a(b)(1). The regulations provide that a child
> must be found to be disabled if he or she has an
> impairment or impairments of "listing-level severity,"
> that is, an "extreme" limitation in one of these domains,
> or "marked" limitations in two or more domains. 20
> C.F.R. § 416.926a(a).

Encarnacion v. Barnhart, 331 F.3d at 84-85 (footnote omitted).

## ALJ's Decision

At the first step of the inquiry, the ALJ found that

---

> limited when your impairment(s) limits only one activity or
> when the interactive and cumulative effects of your
> impairment(s) limit several activities. "Marked" limitation
> also means a limitation that is "more than moderate" but "less
> than extreme." It is the equivalent of the functioning we
> would expect to find on standardized testing with scores that
> are at least two, but less than three, standard deviations
> below the mean.

20 C.F.R. § 416.926a(e)(2)(i) (2009). An "extreme" limitation is
found:

> when your impairment(s) interferes very seriously with your
> ability to independently initiate, sustain, or complete
> activities. Your day-to-day functioning may be very seriously
> limited when your impairment(s) limits only one activity or
> when the interactive and cumulative effects of your
> impairment(s) limit several activities. "Extreme" limitation
> also means a limitation that is "more than marked." "Extreme"
> limitation is the rating we give to the worst limitations.
> However, "extreme limitation" does not necessarily mean a
> total lack or loss of ability to function. It is the
> equivalent of the functioning we would expect to find on
> standardized testing with scores that are at least three
> standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

Claimant had never engaged in substantial gainful activity.  (R. at 11)  At the second step, the ALJ found that Claimant's attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), anxiety, and language disorder were severe within the meaning of the regulations.  (Id.)  However, at the third step the ALJ found that Claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled in severity the requirements of any listed impairment.  (R. at 12); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further stated that Claimant's medically determinable impairments could reasonably be expected to produce some symptoms of the type alleged, but that the statements concerning the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely credible.  (R. at 15)  In addition, the ALJ noted that, although not considered evidence, he agreed with the FRO's findings and decision.[3]  (R. at 21)

In finding that Claimant's impairments, either singly or in combination, did not functionally equal a listed impairment, the ALJ considered Claimant's degree of limitation in each of the six domains.  (R. at 12, 16-20)  The ALJ found Claimant to have less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  (R. at 16-18)  In the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being, the ALJ found Claimant to have no limitations.  (R. at 19-20)  Thus, because Claimant did not have marked limitations in two domains or an extreme limitation in one domain, the ALJ determined that Claimant's impairments did not functionally equal a listed impairment and that, therefore,

---

[3] The FRO's decision can be found at pages 59-65 of the record.

Claimant was not disabled, as defined by the Act, since September 20, 2006, the date the application was filed.  (R. at 21)

## Standard of Review

Pursuant to the statute governing review, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Nevertheless, the Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[4] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(second alteration in original))).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31

---

[4] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

(citing <u>Rodriguez</u>, 647 F.2d at 222 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Errors Claimed**

Plaintiff argues that: (1) the ALJ's findings that Claimant did not meet or equal a listing are not supported by substantial evidence; and (2) the ALJ failed to follow the proper standards for pain evaluation and credibility pursuant to <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1ˢᵗ Cir. 1986), and Social Security Ruling ("SSR") 96-7p.

**Discussion**

I.   **The ALJ's finding that Claimant did not meet or equal a listing is supported by substantial evidence.**

The ALJ found that Plaintiff had less than marked limitations in the domains of acquiring and using information and attending and completing tasks.  (R. at 16-17)  Plaintiff argues that, with regard to the domain of acquiring and using information, the ALJ gave insufficient reasons for his findings. Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 8. Plaintiff also contends that in the domain of attending and completing tasks, the ALJ "gave reduced weight to the opinion of Dr. [Razi] Hasan, and failed to consider at all the opinion of Dr. [Paul] Wehbe, both of whom rated [Claimant's] limitation as marked in this area," <u>id.</u> at 8, and that, therefore, "the ALJ essentially evaluated the records on his own and substituted his own lay opinion for those of the treating physicians," <u>id.</u>

A.   **Acquiring and Using Information**

In finding that Claimant had a less than marked limitation in acquiring and using information, the ALJ stated that:

> The mother reported that the claimant had learning problems with easy frustration yet he was excited about going to school and Ms. Scully stated that the claimant

7

completed his work and did so neatly.  School records
noted that the claimant had some difficulty grasping
information but was making progress.  Testing evidenced
a Verbal IQ of 80 (low average), a Performance IQ of 96
(average), a Full Scale IQ of 81 (low average), and a
processing speed of 75 (borderline).  The claimant has
within normal speech and his comprehension was enhanced
when Spanish was used to explain directions and translate
questions/words as Spanish was primarily used at home
where he spent most of his time.  An October of 2006
report assessed no difficulty acquiring and using
information and Ms. Giarrusso stated that the claimant
was slightly below grade level in reading and written
language but at grade level in math.  The claimant speaks
Spanish and English, which as a dual language child
increased his susceptibility to a receptive and
expressive language delay yet he had satisfactory
articulation, voice, and fluency and he improved with
speech and language services.  While Ms. Glode, Dr.
Hasan, Dr. Wehbe, and Ms. Shea assessed a marked
impairment in this domain, academic records do not
support this level of impairment and mental health
sources observed that the claimant did well in a
structured environment. Thus, the record reflects a less
than mar[k]ed limitation in this domain.

(R. at 16)  As noted above, Plaintiff argues that the ALJ "gave
insufficient reasons for his findings."  Plaintiff's Mem. at 8.
A reading of the above paragraph, however, demonstrates that the
ALJ did, in fact, give sufficient reasons for his findings.
Moreover, the ALJ's findings in this domain are supported by
substantial evidence in the record.

For example, Muriel Glode, Claimant's counselor and a
licensed social worker, assessed a less than marked limitation in
acquiring and using information on her October 5, 2007,
Functional Assessment.  (R. at 176)  Two Disability Determination
Services ("DDS") nonexamining sources, Holly Brown, Ph.D., and
Dora D. Logue, M.D., also found a less than marked limitation in
this domain.  (R. at 272, 324)  Dr. Brown observed that on the
September 15, 2006, psychological evaluation done at Bradley
Hospital ("Bradley"), (R. at 232-36), Claimant attained the

following scores on the Weschler Preschool and Primary Scale of
Intelligence: a verbal IQ score of 80, which she described as low
average, a performance IQ score of 96, average, and a full scale
IQ of 81, also low average, (R. at 272).  The full scale IQ score
was between one and two standard deviations from the mean.  (Id.)
Claimant's general language score of 89 also fell within the low
average range.  (Id.)  Dr. Brown stated that:

> [Speech/language] deficits documented in psych
> [consultative evaluation] (9/06), [neurodevelopmental/
> behavioral consultative evaluation] 9/06, and
> [speech/language consultative evaluation] 11/06.
> [Speech/language] results (English version), showed below
> average ability [Clinical Evaluation of Language
> Fundamentals-4 ("CELF-4")] CORE=72.  Poor performance
> noted w/following directions and reflecting
> knowledge/usage of English grammar/syntax/morphology.
> Voice, fluency, speech intell[igibility] were [within
> normal limits] despite mild arctic errors.  Psych
> [consultative evaluation] stated Claimant's comprehension
> ability was enhanced when Spanish was used to explain
> directions [and] translate questions/words. [Teacher
> questionnaire] (10/06) stated no difficulty
> w/acquiring/using information. Assessment of Claimant's
> English language development suggests below average
> ability with improved performance documented when Spanish
> was used for clarification.

(R. at 272)  Dr. Logue commented that Claimant "had low average
cognitive skills/intelligence scores."  (R. at 324)

Donna Scully, Claimant's kindergarten teacher, noted both
progress and difficulties.  Ms. Scully stated that Claimant
"doesn't seem to be grasping letter [and] sound identification,"
(R. at 110), though he was "showing some progress," (id.).
Similarly, she noted some progress in Claimant's counting and
numeral identification.  (Id.)  Ms. Scully opined that Claimant
"may understand more than he's showing me — and that he's self-
conscious about using English or making mistakes[.]" (Id.)  She
also questioned whether Claimant's "[second] language acquisition

take[s] awhile for a child to feel comfortable in a classroom
setting[.]"  (Id.)  With regard to Claimant's academic
achievement, Ms. Scully noted that Claimant's "progress is
slower," (R. at 111), but that he had difficulty following
directions "only on occasion," (id.).  She also stated that "[h]e
has been identified by our intervention program as needing more
early intervention for phonological/phonemic awareness and will
continue to receive small group instruction in this area[.]"
(Id.)  She rated his academic performance as strong or average
for his age in a majority of the areas assessed and indicated
that he was delayed less than a year in the rest.  (R. at 112-13)

Jill Giarrusso, Claimant's first grade teacher, indicated on
a Teacher Questionnaire dated October 3, 2006, that Claimant's
reading and written language were slightly below grade level and
his math was at grade level.  (R. at 127)  In the domain of
acquiring and using information, she stated that she "ha[d] not
found any problems in these areas."  (R. at 128)  On a Progress
Report, she noted that Claimant "ha[d] made a very smooth
transition to [the] classroom and seems very comfortable."  (R.
at 193)  She additionally observed that he "enjoys school and
gives his best effort but is beginning to struggle more as the
material becomes more challenging."  (Id.)  His grades in most
academic areas were fairly evenly divided between "[m]aking
[p]rogress" and "[n]eeds [i]mprovement[.]"  (Id.)

Claimant's Individualized Education Plans ("IEPs") for grade
one reflect that he was receiving one hour per week of special
education/support services with a speech-language pathologist,
(R. at 159, 191), and that he was making progress in attaining
his goals, (R. at 152, 183).  Michelle Shea, Claimant's speech-
language therapist, noted that he had "moderate receptive and
expressive language delays."  (R. at 345)

Although Drs. Hasan and Wehbe found Claimant to have a

10

marked limitation in acquiring and using information, (R. at 335,
392, 396), and Dr. Hasan opined that Claimant had "[s]ignificant
deficits in [l]anguage based literacy development ...," (R. at
392), Ms. Shea indicated only "[m]oderately delayed [l]ang[uage]
[s]kills," (R. at 386).  Although she, too, assessed a marked
limitation in this domain, (R. at 387), she described his score
on the CELF-4, which fell "within 1.5 to 2 [standard deviations]
below the mean ...," (id.), as "a low average/moderate score,"
(id.).  Ms. Glode, who also indicated a marked limitation in the
domain of acquiring and using information on her February 14,
2007, Functional Assessment, (R. at 280), noted that "[d]ue to
dual language in the home [Claimant] receives speech services at
school," (id.).

Plaintiff further asserts that:

> It is not clear to what [the ALJ] was referring when he
> cited "academic records."  The school records in the file
> do not contradict the opinions of [Claimant's] doctors
> and teachers.  Nor is it clear to what he was referring
> when he said mental health sources noted [Claimant] did
> well in a structured environment.

Plaintiff's Mem. at 8.  Plaintiff's argument would be more
persuasive had the ALJ not provided a three-page summary of the
medical and educational records, referring to specific exhibits,
prior to addressing the six domains of functioning.  (R. at 13-
15)  Thus, in his findings regarding acquiring and using
information, the evidence which the ALJ cites had already been
referenced.  (Id.)  The "educational records" clearly refer to
the teacher reports and IEPs described above, as well as testing
results.  (R. at 151-65, 179-93, 344-46, 386-89)  The "mental
health sources" are those at Bradley, as Plaintiff recognizes.
See Plaintiff's Mem. at 8; see also (R. at 220)("[Claimant]
responded positively to the highly structured and supportive
Pediatric Partial Hospitalization Program] mileu program.").

Although Plaintiff asserts that "the Bradley Hospital records reflected that [Claimant] did well in a structured setting, but they were clearly referring to his emotional well-being and he still had serious emotional issues in that setting," id., "the drawing of permissible inference from evidentiary facts [is] the prime responsibility of the [Commissioner]" Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Accordingly, the Court finds this argument to be without merit.

"[T]he resolution of conflicts in the evidence and the determination of the ultimate issue of disability is for [the Commissioner], not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion." Id.; see also Rodriguez, 647 F.2d at 222. Here, the ALJ was faced with conflicting evidence. He resolved the conflict and made reasonable findings with regard to the domain of acquiring and using information. His findings are supported by substantial evidence.

**B.  Attending and Completing Tasks**

In finding a less than marked limitation in attending and completing tasks, the ALJ stated that:

> While the mother reported that the claimant had difficulty listening and attending, the teachers noted that the claimant completed his work with no problem in areas related to attention. Also, mental health reports revealed no deficits in concentration and attention with no distractibility. Further, there are no indications of disciplinary actions being taken relative to issues with attention. While Dr. Hasan assessed a marked limitation in this domain due to ADHD, he indicated that the ADHD improved when the claimant took medication yet the mother was not entirely compliant with giving the claimant his medication, which indicates that she did not find the claimant's symptoms severe enough to ensure compliance.

> Ms. Glode assessed a marked limitation in this domain as
> the claimant had difficulty attending to directions and
> sitting still yet school records reflect no such findings
> and, in fact, Ms. Scully described the claimant as
> attentive and engaged.  Thus, the record reflects a less
> than marked limitation in this domain.

(R. at 17)  Plaintiff argues that "[Claimant's] teachers, doctor

and therapist, the ones who observed him and knew him best,

stated he had marked issues in at least two domains.[5]   The ALJ

failed to properly evaluate such opinions or articulate

sufficient reasons for failing to give such opinions significant

weight as required by the Commissioner's regulations."

Plaintiff's Mem. at 9.

Implicit in the ALJ's finding of a less than marked

limitation in the domain of attending and completing tasks is the

determination that Dr. Hasan's opinion that Claimant had a marked

limitation in this domain was inconsistent with other evidence

in the record.  (R. at 17); see also 20 C.F.R. § 416.927(d)(4)

(2009).  This conclusion is supported by substantial evidence.

Ms. Scully completed a School Information Form for the

Neurodevelopmental Center at Memorial Hospital and described

Claimant as "always attentive, well behaved," (R. at 110), and

---

[5] To the extent that Plaintiff by this statement intends to
challenge the ALJ's findings with respect to domains other than
acquiring and using information and attending and completing tasks,
such argument is waived because it is neither well-developed nor
supported by specific citations to the record.  See Pike v. Guarino,
492 F.3d 61, 79 n.9 (1st Cir. 2007)("It is not enough merely to mention
a possible argument in the most skeletal way, leaving the court to do
counsel's work, create the ossature for the argument, and put flesh on
its bones."); United States v. Parsons, 141 F.3d 386, 390 (1st Cir.
1998)("It is counsel's job on appeal to mine the record and prove the
alleged error, not to offer suggestive hints and leave the rest of the
work to a busy court."); see also DRI LR Cv 7(d)(4) ("Any memorandum
filed in a case involving an appeal from the ruling or determination
of an administrative tribunal, including but not limited to Social
Security disability determinations, shall include all pertinent
citations to the administrative record.").

"always attentive [and] engaged," (R. at 111).  On an
accompanying Teacher Questionnaire, Ms. Scully indicated "not at
all" to inquiries as to whether Claimant was restless,
distractible, quarrelsome, excitable and impulsive, and easily
frustrated, among others.  (R. at 114)  She noted that Claimant
"wants to behave with adults," (id.), "does comply to rules,"
(id.), and "doesn't show [frustration] [at] school," (id.).
Similarly, Jill Giarrusso, Claimant's first grade teacher,
indicated that she had observed no problems in the domain of
attending and completing tasks.  (R. at 129)  A progress report
for the 2006-2007 school year, when Claimant was in first grade,
indicated either "[e]xcellent" or "[v]ery [g]ood" in almost all
categories related to attitude and behavior.  (R. at 193)  Ms.
Shea also assessed a less than marked limitation in attending and
completing tasks, noting that "[Claimant] is quiet but completes
all task[s] requested of him during therapy sessions."  (R. at
387)  Thus, Claimant's teachers' opinions support the ALJ's
finding of a less than marked limitation in the domain of
attending and completing tasks.

Additionally, non-examining sources at DDS found Claimant to
have a less than marked impairment in the domain of attending and
completing tasks.  Dr. Brown stated on a Childhood Disability
Evaluation Form dated December 18, 2006, that:

> The claimant is [diagnosed] with ADHD and is responsive
> to medication.  The 11/06 Neurodevelopmental evaluation
> suggests that the claimant displays a range of symptoms
> associated with ADHD.  However, teacher suggest [sic]
> that the claimant has "no problems" in all areas related
> to attention.  Despite these concerns, the claimant is
> well managed in the general educational environment
> without [special education[6]] support.    There are no

---

[6] Claimant was receiving one hour per week of speech/language
therapy, (R. at 159, 191), but he spent the remaining twenty-nine
hours of the thirty hour week in a regular classroom setting, (id.).

indications of disciplinary actions taken regarding
issues related to attention.

(R. at 272)  Dr. Logue also found a less than marked limitation
in this domain, stating on April 16, 2007, that:

> The child had ADHD symptoms and behavior problems prior
> to [the] use of Strattera and Clonidine.  The teacher was
> able to cope with the child, and observed minimal if any
> problems of attending to tasks in the structured setting
> of the class in the later fall/06, and [the] child's
> adjustment was good up to 02/07.[7]

(R. at 324)  These assessments are consistent with Dr. Hasan's
statement, noted by the ALJ, (R. at 17), that Claimant was doing
"better when on the medication," (R. at 335).

With regard to Dr. Hasan's opinion, the ALJ was not required
to accord it controlling weight.  See 20 C.F.R. § 416.927(d)(2);[8]
see also SSR 96-2p, 1996 WL 374188, at *2 (S.S.A.)("It is an
error to give an opinion controlling weight simply because it is
the opinion of a treating source if it is not well-supported by

---

[7] Based on the last date used by Dr. Logue, it appears that she
saw the medical records at least through Exhibit 11F, from CEDARR
Family Center, which covered the period from August 16, 2006, through
February 14, 2007.  (R. at 279-94)

[8] Section 416.927(d)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating
> sources ....  If we find that a treating source's opinion on
> the issue(s) of the nature and severity of your impairment(s)
> is well-supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent with
> the other substantial evidence in your case record, we
> will give it controlling weight.  When we do not give the treating
> sources's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section,
> as well as the factors in paragraphs (d)(3) through (d)(6) of
> this section in determining the weight to give the opinion.

20 C.F.R. § 416.927(d)(2) (2009).

15

medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."). Rather, the ALJ must consider the following factors in determining the weight given to a medical source's opinion: 1) the existence of an examining relationship; 2) the existence of a treating relationship (including the length, nature, and extent thereof); 3) the supportability of the opinion; 4) the consistency of the opinion with the record as a whole; 5) the specialization of the source; and 6) any other factors which the claimant or others bring to the adjudicator's attention. See 20 C.F.R. § 416.927(d)(2)-(6).

While the ALJ did not address each factor specifically, it is clear that the ALJ did not ignore Dr. Hasan's opinions. In his summary of the medical evidence, the ALJ addressed Dr. Hasan's records and assessments:

> On November 29, 2006, Razi Hasan, M.D., noted that the claimant was pleasant, healthy, inattentive, and appropriately dressed and groomed with fair speech and a normal gait and coordination. On November 30, 2006, he prescribed Strattera for a disruptive behavior disorder [not otherwise specified], a sleep phase disorder, and a mixed expressive receptive language disorder. The claimant had taken Clonidine in the past but the mother ceased it as the sleep onset delays had relatively resolved ....

> Dr. Hasan noted on May 1, 2007, that the mother reported intermittent sleep onset delays without age inappropriate anxieties, fears or phobias. The claimant was healthy, pleasant, appropriately dressed and groomed, and inattentive with fair speech. On June 14, 2007, he was doing better but was sluggish at times. He appeared calmer with a normal mini mental status exam and normal speech, general appearance, and psychomotor function. Dr. Hasan diagnosed ADHD/ODD, a sleep phase disorder, and learning difficulties. He completed a form on June 14, 2007, that diagnosed ADHD, ODD, and a language delay with a marked limitation in acquiring and using information due to impairments in attentional/executive functioning and attending and completing tasks due to ADHD that

16

> improved when on medication. ...  An October 24, 2007,
> function report by Dr. Hasan diagnosed mixed ADHD, a
> receptive expressive language disorder, ODD, and a
> learning disorder with a marked limitation in acquiring
> and using information due to significant deficits in
> language based literacy treated with [special education];
> in attending and completing tasks as he had noticeable
> executive function impairments; and in self-care with
> fair to poor self-regulatory skills and inconsistent
> self-modulation.

(R. at 14-15)(internal citations omitted).

As noted previously, it is also clear from the ALJ's decision that he found Dr. Hasan's assessment of a marked limitation in the domain of attending and completing tasks to be inconsistent with the evidence of record.  (R. at 17); see also 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  Moreover, Dr. Hasan's indication that Claimant did better "when on the medication," (R. at 335), diminishes the supportability of the doctor's opinion, see 20 C.F.R. § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").  Further, the ALJ was aware that Dr. Hasan was a treating source, as Plaintiff's counsel referred to him at the hearing as Claimant's "treating physician," (R. at 28). Presumably, the ALJ was also aware of Dr. Hasan's specialty, since it is readily apparent from his records and those of the Renaissance Medical Group, where he was a practitioner, that the group specialized in neurodevelopmental/behavioral medicine.  (R. at 299-301, 303, 305, 307-08, 310, 326, 328, 330-31)  Thus, while the ALJ could have been more explicit in following the letter of the regulation, he was certainly in compliance with its spirit.

As for Plaintiff's contention that the ALJ "failed to consider at all the opinion of Dr. Wehbe ...," Plaintiff's Mem.

17

at 8, who assessed a marked limitation in the domain of attending
and completing tasks, (R. at 396), she is mistaken.  The ALJ
noted that "[a]n October 26, 2007, function report by Dr. Wehbe,
M.D., opined ODD, ADHD, and a mixed speech delay with a marked
limitation in acquiring and using information and attending and
completing tasks."  (R. at 15)(internal citation omitted).
Moreover, there is simply no evidence in the record to support
Dr. Wehbe's assessment of a marked limitation in attending and
completing tasks.  See 20 C.F.R. § 416.927(d)(3).  Aside from the
Functional Assessment in question, the only medical records from
Dr. Wehbe appear in the middle of a twenty-seven page exhibit
from Renaissance Medical Group, (R. at 311-13, 319).  The fourth
page listed is actually a duplicate of the second, compare (R. at
319) with (R. at 312), and the records appear to be from a first
visit of Claimant to Dr. Wehbe, (R. at 311-12).  Nothing in these
pages is indicative of a marked limitation in attending and
completing tasks.  Thus, remanding for the purpose of having the
ALJ discuss Dr. Wehbe's opinion in detail would be pointless.
See Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st
Cir. 1999)(noting that remand is not essential "if remand will
amount to no more than an empty exercise")(internal citations
omitted); Fisher v. Bowen, 869 F.2d at 1057 (noting that remand
is not required "unless there is reason to believe that the
remand might lead to a different result").

To the extent that Plaintiff relies on the opinion of Ms.
Glode, Claimant's counselor, as a treating source, her opinion is
entitled to less weight than those of acceptable medical sources
because she is a licensed social worker and is, therefore, not
considered an acceptable medical source.  See 20 C.F.R. §

18

416.913(a) (2009) (listing acceptable medical sources).[9]
Moreover, in her first Functional Assessment, dated February 14,
2007, Ms. Glode opined that Claimant had a less than marked
limitation in the domain of attending and completing tasks.  (R.
at 280)  Although she subsequently assessed a marked limitation
in this domain, (R. at 176), it is the ALJ's responsibility to
resolve conflicts in the evidence, see Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he
resolution of conflicts in the evidence is for the
[Commissioner], not for the courts."); Evangelista v. Sec'y of
Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)
("Conflicts in the evidence are, assuredly, for the
[Commissioner]--rather than the courts--to resolve.")(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971)).
To the extent that Plaintiff contends that the ALJ evaluated
uncontroverted medical data in functional terms, Plaintiff's Mem.
at 8-9 (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.
1999)), the Court rejects such contention.  The evidence is
clearly not uncontroverted, and there is substantial evidence to
support the ALJ's finding of less than marked limitation in the
domain of attending and completing tasks.

---

[9] Section 913(a) lists acceptable medical sources as: licensed
physicians (medical or osteopathic doctors), licensed or certified
psychologists, licensed optometrists, licensed podiatrists, and
qualified speech-language pathologists.  See 20 C.F.R. § 416.913(a)
(2009).  "Other sources" include "[m]edical sources not listed in
paragraph (a) of this section (for example, ... therapists ...)."  20
C.F.R. § 416.913(d)(1).  "Opinions from these medical sources, who are
not technically deemed 'acceptable medical sources' under our rules,
are important and should be evaluated on key issues such as impairment
severity and functional effects, along with the other relevant
evidence in the file."  SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A.).
The ALJ clearly evaluated Ms. Glode's reports, as he referred to them
in his summary of the evidence, (R. at 14-15), and again in making his
findings in the required domains, (R. at 16-17).

**C.    Summary re Plaintiff's First Claim of Error**

The Court finds that the ALJ's determination that Claimant did not have marked limitations in the domains of acquiring and using information and attending and completing tasks is supported by substantial evidence in the record.  Accordingly, I do not recommend remand on this issue.

**II.  The ALJ properly evaluated Plaintiff's credibility.**

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms of the type alleged, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." (R. at 15)  Plaintiff asserts that "the ALJ failed to properly consider the allegations and testimony of [Claimant's] mother, which if accepted, would have resulted in more severe ratings," Plaintiff's Mem. at 9, and that "[t]he ALJ failed to follow[] the Commissioner's ruling and the First Circuit law in evaluating such allegations and testimony," id. at 9-10.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...." Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).  In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.). When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of

the individual's pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms to be considered); 20 C.F.R. § 416.929(c)(3) (2009) (same).  The ALJ's credibility finding is generally entitled to deference.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984) (stating that ALJ is "empowered to make credibility determinations ...").

As an initial matter, the Court notes that the ALJ was aware of his responsibility to make a credibility finding and also of the factors listed in SSR 96-7p.  (R. at 12-13)  Moreover, it is clear from his decision that, although he did not discuss her testimony, the ALJ considered Plaintiff's allegations.  See (R. at 13)("The claimant's mother alleged psychiatric issues.  On January 18, 2006, Memorial Hospital of Rhode Island clinic noted that ... [t]he mother was always stressed and she was concerned

21

about the claimant's too active behavior."); (id.)("Memorial
Hospital of Rhode Island clinic noted on February 13, 2006, that
the mother reported that the claimant exhibited self-abuse,
abusive behavior toward siblings, a little difficulty listening
and paying attention, and hyperactivity without tantrums or head
banging.  She used time outs to discipline, which worked.  The
claimant had no nightmares, no difficulty getting to bed/getting
up, and no problem getting along with other children, parents,
and adults."); (id.)("On July 20, 2006, Dr. Greer reported that
the mother stated that the claimant was very hyperactive at home
and stores but not at school, had difficulty accepting structure
and rules at home, used profanity, hit family members, frequently
fought with friends, took knives and 'played' that he was going
to stab his sister, and had learning problems, some academic
delays, and easy frustration despite trying hard.  The claimant
was punished with timeouts, which he thought were a game.  He was
well behaved in class and less structured school situations.  The
mother described the claimant's general mood as cheerful and felt
that he was happy but threatened to kill himself when he did not
get his way, hit himself at times, was bored easily, and resisted
going to bed but once asleep he stayed asleep.")(internal
citation omitted); (id.)("The Providence Center noted on July 31,
2006, that the mother kept knives locked away but the claimant
continued to threaten his younger siblings and was quiet at
school but not at home."); (R. at 14)("CEDARR Family Center noted
on August 17, 2006, that the mother was concerned about the
claimant's excessive energy, constant cursing, aggression, easy
frustration, and head banging.  The claimant loved animals and
enjoyed soccer, karate, being outside, helping around the house,
and helping others.  He slept from 11pm to 7am but settling him
down was difficult.")(internal citation omitted); (id.)
("Memorial Hospital of Rhode Island clinic noted on October 2,

22

2006, that the mother stated that the claimant was 'a little better' and was sleeping better, but she left before seeing the doctor.")(internal citation omitted); (R. at 15)("Dr. Hasan noted on May 1, 2007, that the mother reported intermittent sleep onset delays without age inappropriate anxieties, fears or phobias.") (internal citation omitted).  These allegations are largely consistent with Plaintiff's testimony at the October 25, 2007, hearing.  (R. at 41-50)  To the extent that they are not, it is the ALJ's responsibility to resolve conflicts in the evidence, as noted above.  See Irlanda Ortiz, 955 F.2d at 769; Evangelista, 826 F.2d at 141.

Although the ALJ did not address Plaintiff's hearing testimony, he is not required to address every piece of evidence in the record.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)("[A]n ALJ is not required to discuss every piece of evidence submitted."); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)(recognizing that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence"); Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)("[T]he ALJ need not directly address every piece of evidence in the administrative record.")(citing Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1)(1st Cir. Sept. 11, 1990)(per curiam, table decision)("An ALJ is not required to expressly refer to each document in the record, piece-by-piece)); cf. Black, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.")(internal citation omitted).  Moreover, Plaintiff was questioned at the hearing by both the ALJ and her counsel. (R. at 41-50)  She was asked about Claimant's anger, (R. at 41-42, 46); his frustration, (R. at 43, 45-46); his behavior, (R. at 42, 47-48); his limitations, (R. at 45-46); his medications and

23

side effects, (R. at 43-44, 48-50); his daily activities, (R. at
45-46); and whether he saw a counselor at school, (R. at 50).

Thus, while the ALJ's credibility finding could have been
more detailed, the Court finds it to be adequate, particularly
given the ALJ's questioning of Plaintiff at the hearing. See
Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195
(1st Cir. 1987)("The ALJ thoroughly questioned the claimant
regarding his daily activities, functional restrictions,
medication, prior work record, and frequency and duration of the
pain, in conformity with the guidelines set out in Avery
regarding the evaluation of subjective symptoms.  The credibility
finding of the ALJ, who observed the claimant, evaluated his
demeanor, and considered how that testimony fit in with the rest
of the evidence, is entitled to deference, especially when
supported by specific findings.  Although more express findings,
regarding ... pain and credibility, than those given here are
preferable, we have examined the entire record and their adequacy
is supported by substantial evidence.")(internal citations
omitted).  I therefore do not recommend remand on Plaintiff's
second claim of error.

### Summary

In sum, the Court finds that the ALJ's conclusion that
Claimant had less than marked limitations in the domains of
acquiring and using information and attending and completing
tasks is supported by substantial evidence.  The Court further
finds that the ALJ properly evaluated Plaintiff's credibility.

### Conclusion

The Court finds that the ALJ's determination that Claimant
was not disabled within the meaning of the Act, as amended, is
supported by substantial evidence in the record and is legally
correct.  Accordingly, I recommend that Plaintiff's Motion to
Reverse be denied and that Defendant's Motion to Affirm be

granted.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
September 30, 2009